**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)**

| | | |
|---|---|---|
| STEPHANIE OVERTON<br>2220 Charter Grove Drive, Apt. 2<br>Fairborn, Ohio 45324,<br>                 Plaintiff, | )<br>)<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| v. | )<br>) | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| STP PRODUCTS, INC.<br>2800 Concorde Drive<br>Vandalia, Ohio 45377 | )<br>)<br>)<br>) | **JURY DEMAND ENDORSED HEREIN** |
|    -and- | )<br>) | |
| SPECTRUM BRANDS<br>2800 Concorde Drive<br>Vandalia, Ohio 45377 | )<br>)<br>)<br>) | |
|    -and- | )<br>) | |
| GLOBAL AUTO CARE LLC<br>c/o Pravinkumar Patel<br>5130 Preferred Place Apt. 318<br>Hilliard, Ohio 43626,<br>                 Defendants. | )<br>)<br>)<br>)<br>)<br>) | |

Plaintiff, Stephanie Overton, by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

**PARTIES**

1. Overton is a resident of the city of Fairborn, Greene County, Ohio.

2. At all times herein, Overton was acting in the course and scope of her employment.

3. STP Products, Inc., at all relevant times herein, was a corporation doing business at 2800 Concorde Drive, Vandalia, Montgomery County, Ohio.



4. Spectrum Brands, at all relevant times herein, was a corporation doing business at 2800 Concorde Drive, Vandalia, Montgomery County, Ohio.

5. Global Auto Care LLC, at all relevant times herein, was a limited liability company doing business at 2800 Concorde Drive, Vandalia, Montgomery County, Ohio.

6. At all relevant times herein, STP Products, Inc.; Spectrum Brands; and Global Auto Care LLC were joint employers of Overton (collectively, "Defendants").

7. Defendants are and, at all times herein, were an employer within the meaning of R.C. § 4112.01 *et seq.*

8. Defendants are and, at all times herein, were an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").

## JURISDICTION & VENUE

9. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Overton is alleging a Federal Law Claim under Title VII.

10. All material events alleged in this Complaint occurred in Montgomery County, Ohio.

11. This Court has supplemental jurisdiction over Overton's state law claims pursuant to 28 U.S.C. § 1367 as Overton's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

13. Within 300 days of the conduct alleged below, Overton filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2019-01301 against Defendants ("Overton EEOC Charge").



14. On or about December 30, 2019, the EEOC issued and mailed a Notice of Right to Sue letter to Overton regarding the Charges of Discrimination brought by Overton against Defendants in the Overton EEOC Charge.

15. Overton received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

16. Overton has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

17. Overton has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

18. Overton is a former employee of Defendants.

19. On or about October 16, 2017, Overton began working for Defendants.

20. During the relevant period, Overton's job title was team lead.

21. Overton is female.

22. Because of Overton's gender, she is a member of a protected class.

23. During the relevant period, Markus Houston was Overton's group lead.

24. Houston is male.

25. Houston is not a member of the same protected class as Overton.

26. During the relevant period, Shawn Watson was a team lead at Defendants.

27. Watson is male.

28. Watson is not a member of the same protected class as Overton.

29. During the relevant period, Watson made frequent sexist comments toward Overton ("Sexist Comments").



30. Among the Sexist Comments, Watson often called Overton a "fat bitch."

31. Among the Sexist Comments, Watson often called Overton a "hoe."

32. From in or about October 2017 through December 2017, Overton complained several times to Houston about the Sexist Comments ("Reports of Discrimination").

33. Houston took no action to stop the Sexist Comments.

34. Houston took no action to discipline Watson for the Sexist Comments.

35. In response to Overton's Reports of Discrimination, Watson called Overton a "snitch."

36. In or about January 2018, Overton reported to Kristen Boggs in Defendants' human resources department ("HR") that Overton was facing discrimination and harassment because of her gender ("Report to HR").

37. Defendants have a policy against harassment ("Harassment Policy").

38. Defendants' Harassment Policy precludes retaliation against employees who complain about harassment.

39. Alternatively, retaliation against employees who complain about harassment is permitted by Defendants.

40. Defendants' Harassment Policy precludes intimidation against employees who complain about harassment.

41. Alternatively, intimidation against employees who complain about harassment is permitted by Defendants.

42. Defendants' Harassment Policy requires employees to report what they reasonably believe is a violation of the Harassment Policy.

43. Defendants' Harassment Policy precludes retaliation against employees who report a violation of the Harassment Policy.



44. Alternatively, retaliation against employees who report a violation of the Harassment Policy is permitted by Defendants.

45. Defendants' Harassment Policy precludes intimidation against employees who report a violation of the Harassment Policy.

46. Alternatively, intimidation against employees who report a violation of the Harassment Policy is permitted by Defendants.

47. The Sexist Comments violate the Harassment Policy.

48. Defendants have a policy to investigate reports of unsafe conditions.

49. Defendants have a policy to investigate reports of violations of its Harassment Policy.

50. An investigation should include interviewing the complainant.

51. An investigation should include interviewing the subject of the complaint.

52. An investigation should include interviewing the subject of the reported discrimination.

53. An investigation should include interviewing witnesses to the reported discrimination.

54. An investigation should include getting a written statement from the complainant.

55. An investigation should include getting a written statement from the subject of the complaint.

56. An investigation should include getting a written statement from the subject of the reported discrimination.

57. In response to Overton's report of the Sexist Comments, Defendants did not interview Overton.

58. In response to Overton's report of the Sexist Comments, Defendants did not interview Watson.

59. In response to Overton's report of the Sexist Comments, Defendants did not interview Houston.

60. In response to Overton's report of the Sexist Comments, Defendants did not interview witnesses.



61. In response to Overton's report of the Sexist Comments, Defendants did not get a written statement from Overton.

62. In response to Overton's report of the Sexist Comments, Defendants did not get a written statement from Watson.

63. In response to Overton's report of the Sexist Comments, Defendants did not get a written statement from Houston.

64. In response to Overton's report of the Sexist Comments, Defendant did not get a written statement from witnesses.

65. Defendants did not investigate Overton's report of the Sexist Comments.

66. Defendants did not give Watson a verbal warning due to the Sexist Comments.

67. Defendants did not give Watson a written warning due to the Sexist Comments.

68. Defendants did not give Watson a final warning due to the Sexist Comments.

69. Defendants did not give Watson a suspension due to the Sexist Comments.

70. Defendants did not terminate Watson due to the Sexist Comments.

71. Defendants did not discipline Watson at all due to the Sexist Comments.

72. Defendants did not give Houston a verbal warning due to the Sexist Comments.

73. Defendants did not give Houston a written warning due to the Sexist Comments.

74. Defendants did not give Houston a final warning due to the Sexist Comments.

75. Defendants did not give Houston a suspension due to the Sexist Comments.

76. Defendants did not terminate Houston due to the Sexist Comments.

77. Defendants did not discipline Houston at all due to the Sexist Comments.

78. On or about January 29, 2018, Defendants gave Overton a disciplinary coaching for reporting the Sexist Comments ("First Retaliatory Discipline").



79. The First Retaliatory Discipline was an adverse action.

80. The First Retaliatory Discipline was an adverse employment action.

81. Defendants gave Overton the First Retaliatory Discipline in retaliation for her reports of discrimination.

82. Defendants gave Overton the First Retaliatory Discipline because of her gender.

83. During the relevant period, Houston was harsher with discipline toward Overton than toward her similarly-situated coworkers ("Discriminatory Treatment").

84. Among other Discriminatory Treatment, Houston made Overton mop up messes made by Houston.

85. Among other Discriminatory Treatment, Houston shouted in Overton's face in front of her coworkers.

86. Among other Discriminatory Treatment, Houston angrily pointed his finger in Overton's face in front of her coworkers.

87. Houston did not give the same Discriminatory Treatment to any employees other than Overton.

88. Houston did not give the same Discriminatory Treatment to Houston.

89. Houston did not give the same Discriminatory to Overton's coworker Doshi (Last Name Unknown).

90. Doshi LNU is male.

91. Houston did not give the same Discriminatory to Overton's coworker Thomas (Last Name Unknown).

92. Thomas LNU is male.

93. The Discriminatory Treatment was because of Overton's gender.

94. The Discriminatory Treatment was retaliation for Overton's Reports of Discrimination.



95. The Discriminatory Treatment was retaliation for Overton's Report to HR.

96. The Discriminatory Treatment was an adverse action.

97. The Discriminatory Treatment was an adverse employment action.

98. On or about March 28, 2018, Overton contacted HR Representative Kristen Boggs by email ("Email Correspondence").

99. In the Email Correspondence, Overton complained about the Discriminatory Treatment.

100. In the Email Correspondence, Overton requested a leave of absence due to the impact the discrimination and harassment were having on her ("Leave Request").

101. On or about March 28, 2018, Defendants gave Overton a disciplinary warning ("Second Retaliatory Discipline").

102. Defendants gave Overton the Second Retaliatory Discipline because of her Email Correspondence.

103. The Second Retaliatory Discipline was retaliation for complaining about discrimination.

104. The Second Retaliatory Discipline was an adverse action.

105. The Second Retaliatory Discipline was an adverse employment action.

106. On or about October 30, 2018, Defendants made Watson Overton's group lead ("Promotion of Watson").

107. Defendants promoted Watson, despite knowing about the Sexist Comments.

108. As a result of the Promotion of Watson, Watson became Overton's direct supervisor.

109. On or about October 30, 2018, Overton complained to supervisors Scott Ewald and Kyle Canan about the Promotion of Watson.

110. Ewald is male.

111. Canan is male.



The Employee's Attorney.™

112. Overton complained about the Promotion of Watson because of his Sexist Comments.

113. On or about October 30, 2018, Overton requested that she not be required to report to Watson.

114. On or about October 30, 2018, Defendants dismissed Overton's complaints about the Promotion of Watson.

115. On or about November 27, 2018, Canan informed Overton that her employment was terminated.

116. Canan did not participate in the decision to hire Overton.

117. On or about November 27, 2018, Canan alleged that the reason for Overton's termination was performance ("Termination Excuse").

118. The Termination Excuse had no basis in fact.

119. The Termination Excuse was not the real reason for Overton's termination.

120. The Termination Excuse was an insufficient basis to justify Overton's termination.

121. The Termination Excuse was pretextual.

122. Defendants' termination of Overton was an adverse action.

123. Defendants' termination of Overton was an adverse employment action.

124. On or about November 27, 2018, Defendants terminated Overton's employment because of her gender.

125. On or about November 27, 2018, Defendants terminated Overton's employment in retaliation for her complaints of discrimination.

126. As a direct and proximate result of Defendants' conduct, Overton suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.



## COUNT I: GENDER DISCRIMINATION IN VIOLATION OF TITLE VII
### (All Defendants)

127. Overton restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

128. Overton is a member of a statutorily protected class based on her gender under Title VII.

129. Defendants treated Overton differently than other similarly situated employees based on her gender.

130. Defendants discriminated against Overton on the basis of her gender throughout her employment with the company.

131. Defendants terminated Overton's employment without just cause.

132. Defendants terminated Overton's employment based on her gender.

133. Defendants' discrimination against Overton based on her gender violates Title VII.

134. As a direct and proximate result of Defendants' conduct, Overton suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT II: GENDER DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*
### (All Defendants)

135. Overton restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

136. Overton is a member of a statutorily protected class based on her gender under R.C. § 4112.01 *et seq*.

137. Defendants treated Overton differently than other similarly situated employees based on her gender.

138. Defendants discriminated against Overton on the basis of her gender throughout her employment with Defendants.



139. Defendants terminated Overton's employment without just cause.

140. Defendants terminated Overton's employment based on her gender.

141. Defendants' discrimination against Overton based on her gender violates R.C. § 4112.01 *et seq*.

142. As a direct and proximate result of Defendants' conduct, Overton suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT III: RETALIATORY DISCRIMINATION IN VIOLATION OF TITLE VII

143. Overton restates each and every prior paragraph of this complaint, as if it were fully restated herein.

144. As a result of Defendants' discriminatory conduct described above, Overton complained about the discrimination she was experiencing.

145. Subsequent to Overton's reporting of harassment, Defendants gave Overton retaliatory disciplinary warnings.

146. Subsequent to Overton's reporting of harassment, Defendants terminated Overton's employment.

147. Defendants' actions were retaliatory in nature based on Overton's opposition to the unlawful discriminatory conduct.

148. Pursuant to Title VII, it is an unlawful discriminatory practice to retaliate against an employee for opposing unlawful discrimination.

149. As a direct and proximate result of Defendants' retaliatory discrimination against and termination of Overton, she suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.



## COUNT IV: RETALIATORY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

150. Overton restates each and every prior paragraph of this complaint, as if it were fully restated herein.

151. As a result of Defendants' discriminatory conduct described above, Overton complained about the discrimination she was experiencing.

152. Subsequent to Overton's reporting of harassment, Defendants gave Overton retaliatory disciplinary warnings.

153. Subsequent to Overton's reporting of harassment, Defendants terminated Overton's employment.

154. Defendants' actions were retaliatory in nature based on Overton 's opposition to the unlawful discriminatory conduct.

155. Pursuant to R.C. § 4112.01 *et seq.*, it is an unlawful discriminatory practice to retaliate against an employee for opposing unlawful discrimination.

156. As a direct and proximate result of Defendants' retaliatory discrimination against and termination of Overton, she suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Stephanie Overton respectfully requests that this Honorable Court grant the following relief:

(a) Issue an order requiring Defendants retroactively to restore Plaintiff to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;



(b) An award against each Defendant of compensatory and monetary damages to compensate Overton for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Overton's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Paul Filippelli*_____
Trisha Breedlove (0095852)
Paul Filippelli (0097085)
**THE SPITZ LAW FIRM, LLC**
470 Olde Worthington Road, Suite 200
Westerville, Ohio 43082
Phone: (614) 410-6720
Fax:    (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
Email: paul.filippelli@spitzlawfirm.com
*Attorneys for Plaintiff Stephanie Overton*

## JURY DEMAND

Plaintiff Stephanie Overton demands a trial by jury by the maximum number of jurors permitted.

*/s/ Paul Filippelli*_____
Trisha Breedlove (0095852)
Paul Filippelli (0097085)

